_[iPLOTKIN, Judge.
This appeal involves complicated issues arising out of the settlement of a suit seeking recovery for the personal injuries and wrongful death of Richard A. Berlier caused by asbestos-related disease. The parties to the settlement are the plaintiffs, Mr. Berlier’s survivors (hereinafter referred to collectively as “the Berliers”), and four of the numerous defendant companies, Turner & Newell, PLC (“T & N”), GAF Corp. (now “G-I Holdings, Inc.”), Union Carbide Corp., and Asbestos Claims Management Corp. (“ACMC”) (hereinafter referred to collectively as “the four settling defendant companies”).
PROVISIONS OF PRODUCER AGREEMENT
All of the four settling defendant companies in this case were, at the time of the settlement agreement which forms the basis of this appeal, “Participating Producers” in the Center for Claims Resolution (“CCR”). The CCR is an organization formed by a group of companies facing numerous asbestos bodily injury claims, called “Participating Producers,” for the purpose of providing various administrative duties related to asbestos claims on behalf of Participating Producers. The relationship among the various Participating Producers in the CCR |¡>is controlled by lengthy document called the “Provider Agreement Concerning Center for Claims Resolution” (“Provider Agreement”), which was executed on September 28, 1988. Generally, the Provider Agreement gives authority to the CCR, which is administered by a Board of Directors, “to administer and arrange for the evaluation, settlement, payment, or defense of all asbestos-related claims.” Producer Agreement, § 11(1). By becoming a member of CCR, a Participating Producer “designates the [CCR] as its sole agent to administer and arrange on its behalf for the evaluation, settlement, payment or defense of all asbestos-related claims against such Participating Producer.” Id., § IV(1). Section VI of the Producer Agreement provides for “Allocation of Liabilities and Expenses” among Participating Producers pursuant to Attachment A of the Producer Agreement.
Pursuant to § III(2)(c) of the Provider Agreement, the CCR Board of Directors “may terminate or suspend the membership of any Participating Producer that: i) is involuntarily placed in bankruptcy under any state or federal law or that has been determined by a court to be insolvent; or ii) the Board of Directors determines, by affirmative vote of three-fifths of the directors then in office, has materially breached the Agreement or Attachment A.” The second reason for termination is subject to some limitations not pertinent to this appeal. The result of termination of membership is set out in § 111(3) as follows:
Upon termination of membership and thereafter, a participating Producer shall have none of the rights or obligations of a member of the Center, as set forth in the [Producer] Agreement, Attachment A hereto and the [OCR’s] bylaws. However, notwithstanding termination of membership, a Participating Producer shall continue to have and to honor all of the obligations incurred by it hereunder or on its behalf as a member prior to the effective date of its membership termination, including any retroactive adjustments of its percentage shares of liability payments and allocation expenses made pursuant to Attachment A hereto.
*1057 13Section XIV(3) of the Producer Agreement requires that “[a]ll disputes concerning the validity, interpretation and application of the Agreement or any provision thereof, and all disputes concerning issues within the scope of the Agreement shall be resolved through alternative dispute resolution” (“ADR”). The CCR is given the right by § XIV(4) to institute an ADR proceeding if a Participating Producer fails to timely pay percentage shares of liability payments or allocated expenses. Attachment A, § E allows a Participating Producer to institute an ADR if it believes any expense allocation in inequitable. Neither the Provider Agreement nor Attachment A addresses liability for payment of claims or settlements allocated to a Participating Producer if that Participating Producer fails to timely pay or institutes ADR concerning an allocated payment.
FACTS
The settlement that forms the basis of this appeal was initially announced on the record on December 13, 1999, the date set for trial of the matter, by attorneys for the four settling defendant companies, as follows:
William Harrison for Turner and Newell, GAF Corporation, National Gypsum (which later became ACMC), together with my partner, Janet McDo-nell for Union Carbide, put on the record on behalf of those four defendants, we have reached a full settlement with all the plaintiffs in this matter ....
Four days later, the settlement agreement was memorialized in writing by a December 17,1999 letter to the Berbers’ attorney from the CCR, signed by James McFadden, Zone Manager. On January 28, 2000, the Berbers signed a Release Agreement. Thereafter, CCR allocated various portions of the settlement amount to the four settling defendant companies. Ml of the settling defendant companies except GAF/GI Holdings paid their allocated share. However, GAF/G-I Holdings pfailed to timely pay its share, and challenged the allocation in on-going ADR proceedings, as required by Attachment A, § E of the Producer Agreement.
On March 8, 2000, CCR sent the Berbers a letter and a check for partial payment, which the Berbers refused to cash for fear that they would be deemed to have accepted the check as complete payment. On March 17, 2000, the Berbers filed a “Motion to Enforce Settlement” against all four settling defendant companies, claiming that the settlement agreement with the four settling defendant companies reached on December 13, 2000, provided that payment was to occur within 30 days, or by March 13, 2000. The Berbers alleged that they received a check on March 15, 2000, in an amount “significantly less than the agreed upon settlement.”
The trial court summarily heard that motion. The parties agree that the settlement agreement is a binding agreement confected on the record; no one contests the fact that it is binding on all four settling defendant companies. In recognition of that fact, the trial court entered an order against all four settling defendant companies in solido, ordering the payment to the Berbers of the total amount of the settlement, plus interest. Ml four settling defendant companies have appealed.
BANKRUPTCY/MEMBERSHIP IN CCR
Before addressing the issues raised on appeal, this court must consider the effect on this appeal of the termination of membership in CCR and on-going bankruptcy proceedings involving two of the settling defendant companies — GAF/G-I Holdings and ACMC.
*1058 I sGAF/G-I Holdings
On December 13, 1999, when counsel for the four settling defendant companies announced the settlement in open court, and December 17, 1999, when CCR sent the letter memorializing the settlement to the Berliers’ attorney, GAF/G-I Holdings was unquestionably a member of CCR. However, at some time between December 17, 1999 and April 27, 2000, when the trial court issued judgment against all four settling defendant companies in solido on the Berbers’ Motion to Enforce Settlement, GAF/G-I Holdings’ membership in CCR was terminated. Although the record is unclear as to the method or date of GAF/G-I Holdings’ termination, all parties to this appeal acknowledge that the termination occurred. Once GAF/G-I Holdings’ membership in CCR was terminated, CCR no longer had “right, authority, and obligation to act on behalf’ of GAF/G-I Holdings. Producer Agreement, § IV(1). Thus, GAF/G-I Holdings was represented at the trial court hearing by different counsel than the counsel representing the other three settling defendant companies. After the trial court judgment, GAF/G-I Holdings filed a separate appeal from that filed by the other three settling defendant companies, who refer to themselves collectively as the “CCR defendants.” The appeals were both assigned the same number in this court.
Following the filing of its appeal and the briefing of its appeal in this court, GAF/G-I Holdings filed a voluntary Petition for Bankruptcy Relief under Chapter 11, Title 11 of the United States Code (“The Bankruptcy Code”). In response thereto, the United States Bankruptcy Court for the District of New Jersey issued an automatic stay of all proceedings against GAF/G-I Holdings. Following notification of this fact to this court, the Berliers filed a motion to sever the appeal |fiof GAF/G-I Holdings from the appeal filed by the CCR defendants.[1] Because the Bankruptcy Court has stayed all proceedings against GAF/G-I Holdings, this court is prohibited from deciding the issues presented by its appeal. Accordingly, the motion to sever GAF/G-I Holdings appeal from the appeal filed by the CCR defendants is hereby granted.
ACMC
Like GAF/G-I Holdings, ACMC was unquestionably a member of CCR both on the date the settlement was announced in open court and on the date the settlement was memorialized in the letter from CCR to the Berliers. Moreover, ACMC was still a member of CCR on April 27, 2000, when the trial court issued judgment against all four settling defendant companies in solido, and when the CCR defendants filed their appeal in this court. However, four days before oral argument before this court, on March 1, 2000, counsel for the CCR defendants filed a “Motion to Withdraw Appearance as Counsel for Defendant Asbestos Claims Management Corp.,” alleging that ACMC membership in CCR was terminated effective August 19, 2000 and that CCR was therefore no longer authorized or obligated to act on ACMC’s behalf. Producer Agreement, § IV(2). None of the parties contest the allegation that ACMC’s membership in CCR has been terminated.
*1059 Following the withdrawal of representation on behalf of ACMC by counsel for the CCR defendants, other counsel filed a “Motion to Admit Counsel Pro Hac Vice” on behalf of ACMC. At oral argument, Counsel Pro Hac Vice was allowed |7to orally advise this court that all proceedings against ACMC were enjoined by virtue of a March 1993 “Confirmation Order” of the United States Bankruptcy Court for the Northern District of Texas. According to the post-argument brief filed by Counsel Pro Hac Vice for ACMC in this court, the 1993 order contained an exception that allowed proceedings against ACMC to continue so long as ACMC was a member of the CCR. When ACMC’s membership in CCR was terminated, the order stayed all proceedings against CCR. Counsel Pro Hac Vice attached exhibits documenting these facts to his post-argument brief.
The remaining CCR defendants — T & N and Union Carbide — suggest that this appeal is not enjoined by the bankruptcy court’s Confirmation Order because the order does not apply to “committed settlements,” described by T & N and Union Carbide as “claims ACMC has already agreed to settle.” T & N and Union Carbide note that ACMC agreed to settle the claims brought by the Berliers, and argue that this court is therefore free to decide the issues raised by ACMC and suggest that this court should simply sever ACMC’s appeal from the appeal filed by T & N and Union Carbide, and allow the bankruptcy court to define the scope and breadth of the stay order affecting proceedings against ACMC. Because counsel who filed the joint brief on behalf of the CCR defendants has withdrawn its representation of ACMC, which is no longer a member of the CCR, this court is not prohibited by the injunction prohibiting proceedings against ACMC from deciding the issues raised by the appeal filed by the CCR defendants — now only T & N and Union Carbide. This court has determined that T & N and Union Carbide — not to mention the Berliers, who have been waiting for | Rpayment of the settlement for more than a year — are entitled to resolution of the issues presented by the appeal filed by the CCR defendants to the extent possible without violating any bankruptcy court orders. Exercising our power under La. C.C.P. art. 2164 to “render any judgment which is just, legal, and proper upon the record on appeal,” we will decide only the single issue presented by the appeal filed by the CCR defendants — whether the trial court properly entered judgment against all four settling defendant companies in solido, rather than entering judgment against GAF/G-I Holdings alone, as the Berliers orally requested at the hearing on the matter.
PROPRIETY OF TRIAL COURT JUDGMENT
The primary argument presented by the CCR defendants on appeal is that the trial court improperly entered judgment against all four settling defendant companies in solido, rather than entering judgment against GAF/G-I Holdings alone, as Berliers’ attorney requested. In support of their argument, the CCR defendants cite the provisions of La. C.C. art. 1795, which provides, in pertinent part, as follows:
An obligee, at his choice, may demand the whole performance from any of his solidary obligors. A solidary obligor may not request division of the debt.
Although the attorney for the Berliers admitted in oral argument before this court that he did orally request that the trial court enter judgment against GAF/G-I Holdings alone, the Berliers now argue that the trial court judgment casting all four settling defendant companies in judg *1060 ment in solido is correct under Louisiana law.
Only a handful of Louisiana cases interpret La. C.C. art. 1795. However, it is clear from those eases that La. C.C. art. 1795 has never been interpreted to limit |9the trial court’s authority to enter judgment against all solidary obligors responsible for a solidary obligation, so long as those solidary obligors are before the court. In fact, the caselaw indicates that the purpose of La. C.C. art. 1795 is to allow the victim to sue only one of several solidary co-obligor. See Rutkowski v. State, 550 So.2d 257, 260 (La.App. 4 Cir.1989). Once the plaintiff has sued one solidary co-obligor, the defendant solidary co-obligor is then allowed to bring in the other solidary co-obligors as third-party defendants. Id. Considering this court’s interpretation of La. C.C. art. 1795, that article is not intended to prevent a court from entering judgment against all the solidarily obligated defendants actually named by a plaintiff in a particular suit. The fact that the Berbers orally requested that the trial court enter judgment against GAF/G-I Holdings alone does not affect the trial court’s authority to enter judgment against all four settling defendant companies in this case.' Accordingly, we find no merit in the argument of the CCR defendants on this issue.
SOLIDARY LIABILITY OF DEFENDANTS
Alternatively, the CCR defendants claim that the trial court’s finding that ah four settling defendant companies are soli-darily liable for payment of the settlement to the Berbers was manifestly erroneous. In support of that argument, the CCR defendants make three separate arguments.
First, the CCR defendants assert that the four settling defendant companies cannot be solidarily liable because the letter from CCR to the Berbers memorializing the settlement agreement does not contain a clear expression of solidary liability. La. C.C. art. 1796 states as follows:
| mSolidarity of obligation shah not be presumed. A solidary obligation arises from a clear expression of the parties intent or from the law.
The argument of the CCR defendants on this issue ignores the last phrase of the above provision. Even assuming that the settlement agreement in question in this case does not contain a clear expression of the intent of the four settling defendant companies to be solidarily liable for the settlement amount — an issue which we expressly do not reach- — -solidarity may also arise “from the law.” In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the Louisiana Supreme Court held that various asbestos defendants are solidarity liable for damages suffered by plaintiffs. Thus, the four settling defendant companies are solidarity liable for the settlement with the Berbers as a matter of law.
Second, the CCR defendants claim that the extrinsic evidence presented in the trial court — specifically, the Producer Agreement and an affidavit from William R. Hanlon, special counsel for CCR— shows that the four setthng defendant companies intended for each one to be liable for its individual share of the settlement. However, the Producer Agreement only affects contribution among joint tort-feasors as it is a procedural vehicle to abócate costs and resolve disputes among Participating Providers; as such, it does not — and cannot, as a matter of law-— affect the liabihty of any individual Participating Producer to plaintiffs. Although the CCR defendants suggest that third parties and members of the public — especially attorneys representing plaintiffs in asbestos cases — are familiar with the pro *1061 visions of the CCR Provider Agreement, that claim is not substantiated by anything in the record of the instant case. Nothing suggests that the Provider Agreement was disclosed to the plaintiffs or their attorney in this case, or that the Provider Agreement is a public document. Certainly the Producer Agreement and |nthe intent of the parties cannot affect the solidarity of liability of defendant companies responsible to plaintiffs for asbestos damages, as established by the Louisiana Supreme Court in Cole.
Third, the CCR defendants claim that fundamental fairness requires entry of a judgment against GAF/G-I Holdings alone. The “theme” of the brief filed by the CCR defendants on this issue is that GAF has repeatedly failed to fulfill its obligations under the Producer Agreement, as evidenced by numerous decisions on issues similar to those presented to this court in courts around the country. The CCR defendants attach numerous decisions to their brief, most of which are improperly cited because they have not been published, and none of which are either binding on this court or applicable to the only issue presented by the CCR defendants on appeal — i.e., whether the trial court improperly entered judgment against all four solidarily-obligated settling defendant companies.
Finding no manifest error in the trial court judgment casting all four settling defendant companies — T & N, GAF/G-I Holdings, Union Carbide, and ACMC — in judgment for payment of the settlement amount to the Berbers as solidary obli-gors, we affirm the trial court judgment. However, the judgment cannot be executed against GAF/G-I Holdings or ACMC until the respective bankruptcy court stays have been lifted.
Nevertheless, we note that the Berbers are entitled to pursue payment of the entire amount of the settlement from the solvent defendant companies — T & N and Union Carbide. La. C.C. art. 1806, relative to insolvency of a solidary obligor, states, in pertinent part, as follows:
A loss arising from the insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion.
I ^CONCLUSION
Accordingly, the trial court judgment ordering all four settbng defendant companies to pay the settlement amount to the Berbers is affirmed. All costs are assessed to the settbng defendant companies.
AFFIRMED.

. At the same time they filed the Motion to Sever GAF/G-I's Holdings appeal from the appeal filed by the CCR defendants, the Berli-ers filed a Motion to Substitute the Surety on the appeal, Greenwich Insurance Co., as appellant in the stead of GAF/G-I Holdings. However, pursuant to an agreement with GAF/G-I Holding, the Berliers subsequently withdrew their motion to substitute. Therefore, that motion is no longer before this court.